UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD LAWRENCE, | ) |
|         Plaintiff, | ) Case No._____ |
| v. | ) |
| NIC, INC., ART N. BURTSCHER, SYLVESTER JAMES, PETE WILSON, HARRY HERINGTON, VENMAL ARASU, ALEXANDER C. KEMPER, BRAD HENRY, TONY E. SCOTT, JAYAPRAKASH VIJAYAN, and WILLIAM M. LYONS, | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br> ) **JURY TRIAL DEMANDED** |
|         Defendants. | ) |

Plaintiff Richard Lawrence ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action on his own behalf and on behalf of all other public stockholders of NIC, Inc. ("NIC" or the "Company") against the members of NIC's board of directors (the "Board" or "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the Action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to Tyler

Technologies, Inc. ("Tyler") through its wholly-owned subsidiary, Topos Acquisition, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

2. On February 10, 2021, NIC and Tyler jointly announced their entry into an Agreement and Plan of Merger dated February 9, 2021 (the "Merger Agreement") to sell NIC to Tyler in a transaction valued at approximately $2.3 billion. If consummated, the agreement presently provides that NIC stockholders will receive $34.00 in cash for each share of NIC they own (the "Merger Consideration"). Merger Sub will merge with and into NIC, with NIC continuing as the surviving corporation and a wholly-owned subsidiary of Tyler.

3. On March 17, 2021, in support of the Proposed Transaction, NIC filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the United States Securities and Exchange Commission ("SEC"), that is supposed to provide all material information to NIC stockholders in seeking their vote and approval of the Proposed Transaction. The Board has failed to provide stockholders with material information necessary for them to make an informed voting or appraisal decision with respect to the Proposed Transaction. The Proxy is materially misleading in many respects, including failing to disclose (a) the key inputs and assumptions underlying the valuation analyses prepared by the Company's financial advisor, Cowen & Company, LLC ("Cowen"), in connection with the rendering of its fairness opinion in support of the Proposed Transaction; and (b) material information concerning the sale process leading up to the Proposed Transaction.

---

[1] Non-Party Tyler is a Delaware corporation with its principal executive offices located at 5101 Tennyson Parkway, Plano, Texas 75024. Tyler's stock trades on the New York Stock Exchange under the ticker symbol "TYL." Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Tyler.

4. It is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of NIC.

10. Defendant NIC is a Delaware corporation, with its principal executive offices located at 25501 West Valley Parkway, Suite 300, Olathe, Kansas 66061. NIC's common stock is traded on the Nasdaq Global Select Market under the symbol "EGOV."

11. Defendant Art. N. Burtscher ("Burtscher") is and has been a director of the Company since 2004 and Lead Independent Director since 2008.

12. Defendant Sylvester James ("James") is and has been a director of the Company since 2020.

13. Defendant Pete Wilson ("Wilson") is and has been a director of the Company since 1999.

14. Defendant Harry Herington ("Herington") is the Company's Chairman of the Board and Chief Executive Officer ("CEO") and has been a director of the Company since 2006. Herington previously served as the Company's President, Chief Operating Officer, and Executive Vice President of Portal Operations.

15. Defendant Venmal Arasu ("Arasu") is and has been a director of the Company since 2015.

16. Defendant Alexander C. Kemper ("Kemper") is and has been a director of the Company since 2007.

17. Defendant Brad Henry ("Henry") is and has been a director of the Company since 2011.

18. Defendant Tony E. Scott ("Scott") is and has been a director of the Company since 2018.

19. Defendant Jayaprakash Vijayan ("Vijayan") is and has been a director of the Company since 2018.

20. Defendant William M. Lyons ("Lyons") is and has been a director of the Company since 2009.

21. Defendants set forth in paragraphs 11 through 20 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. NIC is a leading provider of digital government services that help governments use technology to provide a higher level of service to businesses and citizens and to increase efficiencies. NIC accomplishes this through two channels: its state enterprise businesses and its software & services businesses.

23. In NIC's state enterprise businesses, NIC generally enters into contracts with state and local governments to design, build, and operate digital government services on an enterprise-wide basis on their behalf. The digital government services that NIC builds allow businesses and citizens to access government information online via a variety of connected devices and complete secure payments and transactions, such as applying for a permit, retrieving government records, or filing a government-mandated form or report. NIC's unique state enterprise business model primarily allows the Company to generate revenues by sharing in the fees collected from digital government transactions.

24. In its software & services businesses, NIC provides certain payment processing services, software development and digital government services, other than those provided on an enterprise-wide basis, to federal agencies, as well as state and local governments.

**The Proposed Transaction**

25.     The Proxy provides a partial description of the events leading up the execution of the Merger Agreement.  As detailed below, however, that description is materially misleading and omits material pieces of information.

26.     On September 23, 2020, defendant Herington discussed with Lynn Moore ("Moore"), Tyler's president and CEO, a potential combination of NIC and Tyler.

27.     Thereafter, on October 14, 2020, defendant Herington and other members of NIC's senior management team informed Cowen of Tyler's interest in a potential combination of NIC and Tyler.  Cowen had previously been engaged by NIC in 2018 in connection with NIC's receipt of an indication of interest from a potential financial buyer to act as NIC's exclusive strategic and financial advisor, and to assist NIC in connection with NIC's analysis and consideration of strategic alternatives.

28.     After discussions between the parties, on November 11, 2020, Moore sent defendant Herington an indication of interest in acquiring NIC in an all-stock transaction for a price of $27.25 per share.

29.     The parties continued to discuss a potential combination throughout November 2020, with Moore dangling roles for NIC's leadership team and a role for defendant Herington in Tyler's executive management in a November 29, 2020 email to defendant Herington.

30.     Discussions and negotiations continued between Tyler and NIC, resulting in Tyler's January 12, 2021 indication of interest to acquire NIC for $34.00 per share ("January 12 Proposal").

31.     On January 13, 2021, the NIC Board met to discuss the January 12 Proposal and Cowen reviewed its preliminary financial analysis of the January 12 Proposal.

32. The Board met on January 29, 2021 and defendant Herington informed the Board that Tyler had not made any statements regarding future employment for NIC's senior management team and indicated that no such conversations had taken place.

33. Thereafter, the Board met on February 1, 2021, with Cowen reviewing with the Board an update of certain portions of Cowen's preliminary financial analysis of the January 12 Proposal.

34. One week later the Board met, and Cowen again reviewed with the Board its updated preliminary financial analysis of the January 12 Proposal.

35. On the evening of February 9, 2021, the Board met and approved entry into the Merger Agreement.

36. On February 10, 2021, NIC and Tyler issued a joint press release announcing the Proposed Transaction. The press release states, in pertinent part:

> PLANO, Texas & OLATHE, Kan.-- Tyler Technologies, Inc. (NYSE: TYL) and NIC Inc. (NASDAQ: EGOV), jointly announced today that they have entered into a definitive agreement under which Tyler will acquire all outstanding shares of NIC in an all-cash transaction valued at approximately $2.3 billion.
>
> Under the terms of the transaction, which was unanimously approved by the boards of directors of both companies, NIC stockholders will receive $34.00 per share in cash, which represents a premium of approximately 22% to NIC's 30-day volume weighted average price as of February 9, 2021, and a 14% premium to the closing share price and 52-week closing high of $29.81 on February 9, 2021.
>
> NIC is a leading digital government solutions and payments company, serving more than 7,100 federal, state, and local government agencies across the nation. Headquartered in Olathe, Kansas, NIC delivers user-friendly digital services that make it easier and more efficient for citizens and businesses to interact with government – providing valuable conveniences like applying for unemployment insurance, submitting business filings, renewing licenses, accessing information, and making secure payments without visiting a government office. Leveraging its strong track record of innovation, NIC helps government agencies rapidly deliver new digital solutions to provide essential services to citizens and businesses alike. In fiscal year 2020, NIC delivered revenues of $460.5 million and net income of $68.6 million.
>
> "The pandemic has accelerated the shift by governments to online services and electronic payments as more citizens and businesses are interacting digitally with government. NIC is uniquely positioned with its deep expertise and robust digital

solutions to partner with us in making government more efficient and more accessible to citizens," said Lynn Moore, Tyler's president and chief executive officer. "Our companies share a vision for thriving, connected communities, and our cultures are extremely compatible. The combination will provide extensive benefits for the clients, employees, and shareholders of both companies."

"This announcement marks an exciting next chapter in our 30-year history, and one that we believe will create significant value for our government partners, employees, and stockholders," said Harry Herington, NIC's chief executive officer and chairman of the board. "The combined vision, strength, and resources of our companies will accelerate our collective ability to provide innovative, efficient, transparent services to local, state, and federal governments. With this transaction, we are pleased to be able to deliver immediate, premium cash value to our stockholders and we look forward to NIC's continued success as part of Tyler."

Tyler's strength in local government and NIC's strength in state government are highly complementary. Together, the combined company expects to significantly expand its business with federal agencies and leverage Tyler's sales channels and client base to enhance NIC's scale and accelerate its strategy of bringing vertical applications to clients. In addition, NIC has extensive expertise and scale in the government payments arena, processing more than $24 billion in payments on behalf of citizens and governments in 2020, which will accelerate Tyler's strategic payments initiatives. Tyler has a history of successful acquisitions, investing in and growing acquired companies. Tyler expects NIC to continue to manage its operations from its Olathe, Kansas, home office and to retain its employees and leadership team.

**The Proxy Contains Material Misstatements and Omissions**

37. The defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to NIC's stockholders. The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

38. Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the key inputs and assumptions underlying the valuation analyses prepared by Cowen in connection with the rendering of its fairness opinion in support of the Proposed Transaction; and (b) material information concerning the sale process leading up to the Proposed Transaction.

*Material Omissions Concerning Cowen's Financial Valuation Analyses*

39. The Proxy omits material information regarding Cowen's financial analyses.

40. The Proxy describes Cowen's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Cowen's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, NIC's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Cowen's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

41. With respect to Cowen's *Selected Public Companies Analysis* and *Selected M&A Transactions Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the comparable companies and transactions analyzed.

42. With respect to Cowen's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (a) quantification of NIC's terminal value; (b) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%; (c) NIC's total debt, cash and cash equivalents utilized in the analysis; and (d) the number of fully diluted Company shares outstanding.

43. With respect to Cowen's *Illustrative Present Value of Future Stock Price Analysis*, the Proxy fails to disclose: (a) quantification of the inputs and assumptions underlying the discount rate of 8.6%; (b) NIC's total debt, cash and cash equivalents utilized in the analysis; (c) the number of fully diluted Company shares outstanding; and (d) Cowen's rationale for utilizing multiples ranging from 14.6x to 16.6x.

44. With respect to Cowen's *Research Analyst Price Targets* analysis, the Proxy fails to disclose: (a) the price targets observed; and (b) sources thereof.

45. Without such undisclosed information, NIC stockholders cannot evaluate for themselves whether the financial analyses performed by Cowen were based on reliable inputs and

assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which NIC's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

*Material Omissions Concerning the Background of the Proposed Transaction*

46. The Proxy fails to disclose material information concerning the background of the Proposed Transaction.

47. For example, the Proxy fails to disclose whether NIC entered into a confidentiality agreement with the potential financial buyer who submitted an indication of interest in 2018 and, if so, whether the confidentiality agreement contained a standstill provision or "don't-ask-don't-waive" ("DADW") standstill provision that is still in effect and presently precluding the financial buyer from submitting a topping bid for NIC.

48. Notably, under the Merger Agreement and subject to certain exceptions, "NIC must enforce, and not waive, terminate or modify without Tyler's prior written consent, any confidentiality, standstill or similar provisions in any confidentiality, standstill or other agreement entered into prior to the date of the merger agreement with any person in connection with such person's consideration of an acquisition proposal or any inquiry, proposal or offer that would reasonably be expected to lead to an acquisition proposal[.]" Proxy at 68. Based on this language, it seems clear that NIC has entered into confidentiality agreements with third parties that contain standstill provisions, which material information has not been disclosed to stockholders.

49. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a

superior proposal for NIC. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy.

50. Any reasonable NIC stockholder would deem the fact that a likely topping bidder may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

51. Additionally, the Proxy fails to disclose the price terms set forth in the potential financial buyer's indication of interest. Without this material omitted information, NIC stockholders cannot properly assess the Merger Consideration and how it compares to past offers received for the Company.

52. Moreover, the Proxy sets forth that Cowen reviewed with the Board (a) its preliminary financial analysis of Tyler's January 12 Proposal at the January 13, 2021 Board meeting; (b) an update of certain portions of its preliminary financial analysis of the January 12 Proposal at the February 1, 2021 Board meeting; and (c) an updated preliminary financial analysis of the January 12 Proposal at the February 8, 2021 Board meeting. The Proxy, however, fails to disclose the certain portions of Cowen's preliminary financial analysis that were updated, why certain portions were updated and the effect the updates had on Cowen's financial analyses.

53. Furthermore, the Proxy must disclose when, and if, defendant Herington informed the Board that his statements to the Board at the January 29, 2021 Board meeting that "Tyler had not made any statements regarding future employment for NIC's senior management team" (*id.* at 34) were false, and that, in fact, Moore dangled roles for NIC's leadership team and a role for

defendant Herington in Tyler's executive management in a November 29, 2020 email to defendant Herington.

54. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

55. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of NIC will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

56. Plaintiff repeats all previous allegations as if set forth in full.

57. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

58. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted

12

material facts, including the key inputs and assumptions underlying the valuation analyses prepared by Cowen in connection with the rendering of its fairness opinion in support of the Proposed Transaction; and material information concerning the sale process leading up to the Proposed Transaction.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

59.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

60.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

61.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

62.     Plaintiff repeats all previous allegations as if set forth in full.

63.     The Individual Defendants acted as controlling persons of NIC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of NIC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

64. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

66. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

67. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, NIC stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of NIC, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to NIC stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 30, 2021                              **LONG LAW, LLC**

By:  /s/ Brian D. Long
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*